UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JACLYN WATERS, individually and on behalf of all others similarly-situated, ) ) ) Plaintiff, ) ) v. ) ) FERRARA CANDY CO., ) ) Defendant. ) | No. 4:17-cv-00197-NCC |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Jaclyn Waters' Motion to Remand (Doc. 12). The Motion is fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(c) (Doc. 19). For the following reasons, Plaintiff's Motion will be **GRANTED**.

**I. Background**

On December 8, 2016, Plaintiff filed a petition in the Circuit Court for the City of St. Louis, Missouri against Defendant (Doc. 1-1). In the Petition, Plaintiff alleges that Defendant, an Illinois corporation with its headquarters in Oakbrook Terrace, is leaving too much empty space ("slack-fill") in the cardboard boxes of its "Chewy Red Hots" candy product. Specifically, Plaintiff alleges that the amount of slack-fill misrepresents how much candy is in each box despite the weight of the product being printed on the packaging.

In Count I of the Petition, Plaintiff alleges that this constitutes an unfair, fraudulent or deceptive practice under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat.

§407.010 *et seq*. In Count II, Plaintiff alleges that the proceeds from Defendant's sales of the products due to deception of consumers constitute unjust enrichment.

Plaintiff requests that the case be certified as a class action, the putative class being "[a]ll Missouri citizens who purchased the Products in the five years preceding the filing of this Petition[.]" In her Prayer for Relief, Plaintiff asks for compensatory damages or restitution, pre- and post-judgment interest, and attorneys' fees. Although it is not set forth in the Prayer for Relief, in Paragraph 44 of the Petition, Plaintiff also requests that the Court grant injunctive relief pursuant to Mo. Rev. Stat. § 407.025.2.

On January 11, 2017, Defendant removed the case to federal court under 28 U.S.C. §1441 (Doc. 1). In its Notice of Removal, Defendant invokes the diversity jurisdiction of the Court as provided under 28 U.S.C. §1332(d) (as amended by the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4), stating that it is an Illinois company being sued by a Missouri plaintiff and putative class, there are at least 100 members of the putative class, and that the value of the matter in controversy exceeded $5 million exclusive of interest and costs. For the "amount in controversy" requirement, Defendant gives a summary of the factors which it contends add up to exceed the jurisdictional minimum. First, Defendant asserts that the compensatory damages in this matter could be up to $779,296, the sales total for Red Hots products in Missouri for the five years preceding the suit. Defendant then calculates that attorneys' fees, which are recoverable under the MMPA, could reach as high as 40 percent of the compensatory damages. This would add $311,718 to the amount in controversy. Third, Defendant asserts that punitive damages, if awarded pursuant to the MMPA, could be as high as five times the amount of the judgment of actual damages and attorneys' fees. It thus calculates potential punitive damages at $5,455,070. Finally, Defendant states "changes in production

processes and/or capital equipment that would be necessitated by an injunction requiring an increase in the percentage fill in the product packages at issue could possibly cost Ferrara in excess of $6,000,000." As such, Defendant asserts that the value of the matter in controversy could possibly reach $11,455,070.

On January 23, 2017, Plaintiff filed a Motion to Remand (Doc. 12). Plaintiff requests that this Court remand the case to state court, challenging only Defendant's assertion that the matter in controversy was more than $5 million exclusive of interest and fees.

## II. Analysis

Federal courts have original jurisdiction in proposed class actions in which the matter in controversy exceeds the sum or value of $5 million (exclusive of interest and costs), any member of a class of plaintiffs is a citizen of a state different from any defendant, and there are at least 100 class members. 28 U.S.C. §1332(d) (as amended by CAFA).

Under CAFA, a party who seeks to invoke the jurisdiction of the federal court bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the minimum jurisdictional amount. *Rasmussen v. State Farm Mut. Auto. Ins. Co*., 410 F.3d 1029, 1031 (8th Cir. 2005). "This standard applies regardless of whether 'the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum.'" *Bell v. Hershey Co*., 557 F.3d 953, 956 (8th Cir. 2009) (quoting *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003)). "Once the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Id.*

Plaintiff alleges that the $5 million jurisdictional minimum is not satisfied in this case, pointing to, among other things, statements in the Petition that the aggregated amount in controversy will not exceed $4,999,999 for the entire class. Unlike in traditional cases, however, stipulated disclaimers of recovery are not effective when determining the value of a putative class action prior to certification of the class. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 558 (2013) (holding that a plaintiff's stipulation prior to certification that the class will not seek relief exceeding $5,000,000 is not binding on the putative class members, raising the legal possibility that relief could exceed that total).

As stated above, Defendant asserts that there are multiple categories of award which, singly or stacked, add up to more than $5 million. In support of these assertions, Defendant submitted two affidavits with their Opposition to the Motion to Remand. The first is from Defendant's Vice President of Iconic Brands, Mark Riegel (Doc. 15). Mr. Riegel states that the total retail sales of all Red Hots products (regardless of packaging type) in the St. Louis and Kansas City metropolitan areas was $779,296 from 2012 through 2016.[1] He further states that the majority of sales of Red Hots are in the "Theatre" or "Changemaker" cardboard boxes, and that estimated sales of those products were approximately $464,903 in St. Louis and Kansas City during the 2012-2016 timeframe.

The second affidavit submitted by Defendant in support of its assertion of the amount in controversy is from Michael Murray, Chief Operating Officer (Doc. 16). Mr. Murray asserts that if Defendant were compelled by injunction to change its packaging processes to eliminate slack-

---

[1] It is unclear from the context whether the Kansas City metropolitan area includes only Kansas City, Missouri or also includes Kansas City, Kansas. However, Mr. Riegel does note that the figure he provides does not encompass the entirety of Missouri sales, due to limitations in the company's data.

4

fill,[2] it would cost approximately $3,595,000 to upgrade the Theater packing equipment and a similar amount for the Changemaker equipment.

In her Reply Memorandum, Plaintiff asserts for the first time that her claims "only concern the Red Hots products sold in 5-oz boxes, which Defendant calls 'Theater boxes,' and not the 0.9-oz and 0.8-oz boxes that Defendant calls 'Changemaker boxes'" (Doc. 20 at 11). This is not consistent with what Plaintiff actually pled in her Petition; the MMPA and unjust enrichment claims, as well as the putative class definition, are phrased in terms of "the Products." Paragraph 3 of the Petition defines "the Products" as "Chewy Red Hots candy ('Products') in non-transparent cardboard boxes" (Doc. 1-1). Both sizes, Theater and Changemaker, are packaged in non-transparent cardboard boxes. Thus, because the Petition makes no distinction between the Theatre and Changemaker sizes, both are included in the jurisdictional amount calculation.

As an initial matter, the Court finds that compensatory damages and attorneys' fees do not, by themselves, satisfy the $5 million minimum. Even if this Court credits the assertion that compensatory damages and/or disgorgement could equal the full purchase price of the allegedly deceptive products, it appears that sales of Red Hots for the five-year period preceding the filing of the Petition are more likely than not less than $1 million across the whole state of Missouri. As a result, even if the Court were to award class counsel attorneys' fees at the rate of 40 percent of compensatory damages, they would more likely than not be $400,000 or less. As such, the Court must look to Defendant's allegations regarding punitive damages and injunctive relief to determine if they add enough value to surpass the $5 million CAFA minimum.

---

[2] Mr. Murray does not specify whether the assumed injunction would require additional filling of the existing package sizes or shrinking the package size to more closely fit the current weight of actual candy. Mr. Murray also does not specify whether the supposed injunction would require

**1. Punitive Damages**

Because Plaintiff and the putative class could not recover punitive damages under the current Petition, Defendant's estimate of possible punitive damages is not included in the jurisdictional amount calculation. *See Bell*, 557 F.3d at 956. Both Missouri law and federal procedure have heightened pleading requirements for a plaintiff who wishes to claim punitive damages. Missouri law requires that, "[i]n actions where exemplary or punitive damages are recoverable, the petition shall state separately the amount of such damages sought to be recovered." Mo. Rev. Stat. § 509.200. Furthermore, recovering punitive damages under the MMPA requires pleading facts supporting a finding that the defendant's "conduct was outrageous due to defendant's evil motive or reckless indifference to the rights of others." *Hurst v. Nissan N. Am., Inc.*, No. 4:12-CV-1488-DGK, 2013 WL 65466, at *4 (W.D. Mo. Jan. 4, 2013), *aff'd*, 511 F. App'x 584 (8th Cir. 2013) (per curium) (quoting *Walsh v. Al West Chrysler, Inc.,* 211 S.W.3d 673, 676 (Mo. App. 2007)).

In *Hurst*, the Court of Appeals affirmed the district court's position that "because punitive damages were not sought in the state court petition, such damages were legally unrecoverable under Missouri law." *Hurst*, 511 F. App'x at 586. In *Hurst*, a named plaintiff filed a petition alleging that the dashboards in certain automobiles were defective. *Id.* The petition requested class certification, compensatory damages, attorneys' fees and costs. *Id.* Defendant attempted to remove the case to federal court under CAFA, but the case was remanded because it did not meet the amount in controversy minimum. *Id.* The class was certified and the case continued until, three weeks before trial, the plaintiff submitted proposed jury instructions which included potential punitive damages. *Id.* Nissan then attempted to

---

modification of every Red Hots candy production line or only a few lines.

remove the case a second time. *Id.* The District Court for the Western District of Missouri again held that the amount in controversy was not sufficient to meet CAFA's standard, because without having been properly pled, the punitive damages would not have been allowed under Missouri law. *Id.* The Court of Appeals found that the district court did not err in disregarding them when evaluating whether CAFA's minimum amount in controversy was met. *Id.*

Defendant has not satisfied the requirement of showing by a preponderance of evidence that punitive damages are a possibility in this case. Nothing in Plaintiff's petition supports a claim for punitive damages at trial. Plaintiff makes no mention of punitive damages in her pleadings, and she has not included the statutorily-required separate statement as to any amount of punitive damages sought. *See* Mo. Rev. Stat. § 509.200. Nor has Plaintiff pled facts to support a finding that Defendant's conduct was outrageous due to "evil motive or reckless indifference to the rights of others." *Hurst*, 2013 WL 65466, at *4. Punitive damages would not be recoverable under the case as pled; therefore, Defendant's estimate of possible punitive damages is not included in the jurisdictional amount calculation. *See id.*

Defendant argues that Plaintiff's decision not to plead for punitive damages should be treated the same way as her disclaimer of other recovery over $4,999,999 and disregarded on the theory that this is also not binding on the class prior to certification. This is speculating about the future of the case. Any argument that Plaintiff or subsequent class counsel (if a different attorney were appointed) could amend the pleadings to include punitive damages as authorized by the MMPA is unavailing, as jurisdiction is determined at the time of removal. *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 789 (8th Cir. 2012). The shifting of the burden of proof to the non-removing party does not occur until after the removing party has shown that the case meets the jurisdictional minimum by a preponderance of evidence. The Court of Appeals in

7

*Hurst* also addressed the possibility that upon amendment of the pleadings, punitive damages would be available, finding that the case would become removable at that time. *Hurst*, 511 F. App'x at 586. As in *Hurst*, the preponderance of evidence in this case shows that punitive damages are not a legal possibility at the time of filing or the time of removal, and therefore are not part of the amount in controversy in this case.

**2. Injunctive Relief**

Plaintiff claims in her Memorandum of Law in Support of Motion to Remand that she "does not seek an injunctive remedy, thus, any purported injunctive value should not be included in the CAFA calculation" (Doc. 13 at 12). In the Petition, however, Plaintiff requests injunctive relief under Mo. Rev. Stat. § 407.025.2 (Doc. 1-1 ¶ 44). Therefore, Plaintiff has put the value of injunctive relief at issue. As noted above, Defendant has projected costs of $3,595,000 to retool the Theater packaging line to decrease the percentage of slack-fill, and a similar amount for the Changemaker line, making the total potential value of an injunction approximately $7.19 million (Doc. 16 ¶ 6).

There currently exist two schools of thought on how to evaluate the amount-in-controversy of a case for jurisdictional purposes in a class action. Both spring from the same starting point. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 833 (8th Cir. 2005) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). However, the question of "value to which party?" can yield very different answers, especially in cases like the present one where the benefit to the class may be significantly lower than the cost of compliance to the defendant. The traditional rule in the Eighth Circuit is that value is judged solely from the plaintiff's

8

viewpoint in determining the amount in controversy (the "plaintiff's-viewpoint test"). *Smith v. Am. States Preferred Ins. Co.*, 249 F.3d 812, 813-14 (8th Cir. 2001); *see Mass. State Pharm. Ass'n v. Fed. Prescription Serv., Inc.*, 431 F.2d 130, 132 (8th Cir. 1970); *see also Trimble v. Asarco, Inc.*, 232 F.3d 946, 960-62 (8th Cir. 2000). The other main methodology is to evaluate whether the value of the case is greater than the jurisdictional amount from either party's point of view, and to allow removal if one or the other meets the threshold (the "either-viewpoint test").

The plain language of CAFA does not specify whose viewpoint is to be used when determining whether the $5 million threshold has been met. However, the Senate Report accompanying the law provides:

> [T]he Committee intends that a matter be subject to federal jurisdiction under this provision if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief ). The Committee is aware that some courts, especially in the class action context, have declined to exercise federal jurisdiction over cases on the ground that the amount in controversy in those cases exceeded the jurisdictional threshold only when assessed from the viewpoint of the defendant . . . . [These courts reasoned] that assessing the amount in controversy from the defendant's perspective was tantamount to aggregating damages. Because [CAFA] explicitly allows aggregation for purposes of determining the amount in controversy in class actions, that concern is no longer relevant. [I]n assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits that would logically flow from the granting of the declaratory relief sought by the claimants.

*Adams v. Am. Family Mut. Ins. Co*., 981 F. Supp. 2d 837, 848 (S.D. Iowa 2013) (quoting S. Rep. 14, 109th Cong. 1st Sess. 41 (2005)). Based on this Senate Report, the district court in *Adams* found that it should abandon the plaintiff's-viewpoint test in favor of the either-viewpoint test. *Id.* at 850.

That being said, the Senate Report is ultimately unpersuasive for two reasons. First, the language of diversity jurisdiction ultimately remained unchanged when Congress passed CAFA.

9

*See* 28 U.S.C. § 1332(a). "[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Lorillard v. Pons*, 434 U.S. 575, 581 (1978). Congress chose to pass CAFA and incorporate previous diversity jurisdiction sections without providing a particular viewpoint test. Therefore, the plain language of the statute implies that the plaintiff's viewpoint test is still proper in the class action context. Second, the Judiciary Committee's CAFA report was issued ten days after CAFA was signed into law. *See Pagel v. Dairy Farmers of America, Inc.*, 986 F. Supp. 2d 1151, 1160 (C.D. Cal. 2013). "Such post hoc statements of a congressional Committee are not entitled to much weight." *Weinberger v. Rossi*, 456 U.S. 25, 35 (1982). Thus, the Senate Report is outweighed by this Circuit's longstanding precedent.

The Senate Report departs again from court rulings when it provides, "If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied)." S. Rep. 14, 109th Cong. 1st Sess. 42 (2005). This approach is a far cry from the traditional rule for removal and has been rejected by the Eighth Circuit. *Bell*, 557 F.3d at 956; *see also Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006) (holding that CAFA did not change the traditional rule that defendant bears the burden). As noted by Chief Judge Sippel:

> The omission of a burden of proof standard in the CAFA does not create an ambiguity inviting courts to scour its legislative history to decide the point. By failing to specifically address the burden of proof in the Act, especially in light of discussing the issue in a Committee Report, Congress is deemed to have not intended to change the settled case law on that issue. Had Congress wished to change which party bears the burden of proof in a removal action under the CAFA it could have explicitly done so.

*Judy v. Pfizer, Inc.,* No. 4:05CV1208RWS, 2005 WL 2240088, at *2 (E.D. Mo. 2005).

The Court is convinced that the same logic applies in the instant situation. A plaintiff is, to at least a certain extent in a class action context, still the master of her own pleadings. It would be manifestly unjust to allow a defendant to invoke federal jurisdiction using a worst-case hypothetical that involves reworking their core business practices to solve the most minimal problem. This is especially true because removal takes place so early in a case, when plaintiffs cannot reasonably be expected to have enough information about those behind-the-scenes practices to rebut such a hypothetical.

Eighth Circuit case law was well settled on the viewpoint issue when CAFA was passed, and nothing in the text of the statute overturns those established interpretations. *Bell*, 557 F.3d at 956; *Blockbuster, Inc.*, 472 F.3d at 58. Thus, in line with longstanding Eighth Circuit tradition, the Court will apply the plaintiff's-viewpoint test. As Defendant has not submitted any evidence regarding the value of requested injunctive relief from the putative class's point of view, this factor cannot be used in calculating the overall sum required to satisfy CAFA's amount-in-controversy standard.

Even if the Court were to apply the either-viewpoint test, Defendant has failed to meet its burden to establish that the overall sum of alleged injunctive relief from the perspective of the defendant would raise the total sum of requested relief above CAFA's amount-in-controversy threshold. In support of its theory regarding the cost of injunctive relief, Defendant provides the affidavit of Michael Murray, Chief Operating Officer (Doc. 16). Mr. Murray asserts that if Defendant were compelled by injunction to change its packaging processes to eliminate slack-fill, it would cost approximately $3,595,000 to upgrade the Theater packing equipment and a similar amount for the Changemaker equipment. As previously noted, Mr. Murray, however,

fails to specify whether the assumed injunction would require additional filling of the existing package sizes or shrinking the package size to more closely fit the current weight of actual candy or whether the supposed injunction would require modification of every Red Hots candy production line. Unlike *Adams* where the defendant was "virtually certain" to incur "substantial pecuniary costs" not included in the plaintiff's estimate, here Defendant proposes a speculative $7.19 million injunctive relief cost that Plaintiff cannot reasonably have enough information to rebut. *Adams*, 981 F. Supp. 2d at 848. The test is "not whether the defendant can show its potential damages are greater than the jurisdictional amount." *Lohr v. United Fin. Cas. Co.*, 2009 WL 2634204, at *7 (W.D. Pa. Aug. 25, 2009).

Utilizing the established Eighth Circuit standard, the Court finds that Defendant has not met its burden to show that the amount in controversy exceeds $5 million. Defendant's evidence suggests that even if every putative class member got a full refund of the purchase price of their product, it would almost certainly amount to less than $1 million. Similarly, in the event that this Court were to award attorney's fees at a rate of 40 percent, that still only brings the total value to $1.4 million. As such, Defendant has failed to show by a preponderance of evidence that the minimum requirements for federal subject matter jurisdiction have been met. Finally, in light of the aforementioned, the Court finds a hearing on the matter unnecessary.

### III. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Hearing (Doc. 24) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand (Doc. 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Twenty-Second Circuit Court of Saint Louis City, Missouri. A separate order of remand will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that all remaining pending motions (Docs. 17, 21) are **DENIED, without prejudice as moot**.

Dated this 16th day of June, 2017.

          /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE